**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**FARM CREDIT LEASING SERVICES CORPORATION**        **PLAINTIFF**

**v.**        **4:19CV00242 - BRW**

**JEFFREY MCDONIEL**        **DEFENDANT**

**ORDER**

Pending is Plaintiff's Motion for Partial Summary Judgment (Doc. No. 16). Defendant has responded.[1] For the reasons set out below, the Motion is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

This case involves several commercial agriculture equipment leases.[2] The pending motion involves one of the lease agreements - - contract number 001-0062122-000 (the "62122 Lease").[3]

On April 11, 2014, under the 62122 Lease, Defendant agreed to lease a 2014 Deutz Fahr Agrotron Tractor (the "tractor") in exchange for yearly payments.[4] Defendant admits he signed the 62122 Lease and a Lease Change Acknowledgment, but contends his signature was forged on several other documents.[5]

During the lease period, Defendant could not, under the terms of the 62122 Lease, assign, transfer, or depose of the tractor.[6] He also could not remove the tractor from the location

---

[1] Doc. No. 18.

[2] Doc. No. 1.

[3] Doc. No. 16.

[4] Doc. Nos. 9, pp. 1-2; 17, ¶¶5-10.

[5] Doc. No. 17-3, ¶¶1-6.

[6] Doc. No. 17, ¶6.

1

specified in the lease, which was his property.[7] If Defendant defaulted, Plaintiff could repossess the tractor and demand any unpaid rentals and fees.[8]

In reliance on the 62122 Lease, Plaintiff wired funds to Delta Southern Chemical Corporation, LLC ("DSC") to purchase the tractor.[9] Charles Schindler, of DSC, then presented the 62122 Lease to Defendant and delivered the tractor.[10]

On an unspecified date, Defendant alleges Mr. Schindler "picked up the tractor, acknowledged that he would pay the remaining indebtedness to the Plaintiff, and presented to Plaintiff a check for $172,000.00."[11] The check from DSC to Plaintiff, signed by Mr. Schindler, is dated April 15, 2015, and appears to have cleared on April 29, 2015.[12] Defendant "believed, until recently, that was payment in full for this lease."[13]

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[14] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that

---

[7]Doc. Nos. 9, pp. 1-2; 17, ¶6.

[8]Doc. No. 17, ¶8.

[9]*Id*. at ¶11.

[10]Doc. No. 9, p. 2.

[11]*Id*. at p. 2.

[12]*Id*. at Ex. 1.

[13]*Id*. at p. 2.

[14]Fed. R. Civ. P. 56.

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[15]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[16] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[17] A court must view the facts in the light most favorable to the party opposing the motion.[18] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[19]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[20]

---

[15]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[16]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[17]*Id.* at 728.

[18]*Id.* at 727-28.

[19]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[20]*Anderson*, 477 U.S. at 248.

## III. DISCUSSION

### A. Default

It is undisputed that Defendant failed to make periodic payments as required by the 62122 Lease.[21] It also appears undisputed that Plaintiff accepted at least partial payment for the 62122 Lease from Mr. Schindler.[22] Regardless of payment, Defendant defaulted by failing to keep possession of the tractor on his property.

Defendant appears to allege fraud by Mr. Schindler.[23] He has not, however, specifically pled fraud by Mr. Schindler or asked to join him as a necessary party.

The 62122 Lease included a Minnesota choice-of-law provision covering the construction, validity, and performance of the lease.[24] Under Minnesota law, the alleged insufficient payments or fraud by Mr. Schindler did not release Defendant from the terms of the lease.[25]

Defendant claims a material dispute remains whether Plaintiff was "put on notice by accepting payment" from Mr. Schindler.[26] The insinuation is that Plaintiff was "put on notice" of third-party misconduct and "did nothing to investigate nor limit their exposure."[27] Plaintiff

---

[21]Doc. Nos. 17, ¶12; 9, p. 1-2.

[22]Doc. Nos. 9, Ex.1; 18, pp. 1-2.

[23]Doc. Nos. 9; 18.

[24]Doc. Nos. 17, ¶20.

[25]See *Lyon Fin. Servs. v. Shyam L. Dahiya, M.D., Inc*, Case No. 08-5523 (DFW/JJK) (D. Minn. March 19, 2010) (absent assignee or agency relationship, third party misconduct is not a defense to the performance of an agreement) (citing *Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc*., 382 F.3d 852, 856-57 (8th Cir. 2004) (applying Iowa law); *Lyon Fin. Servs., Inc. v. Marty Hearyman, MD,* No. A-08-1795 (Minn. Ct. App. June 2, 2009)(unpublished).

[26]Doc. No. 18 p. 1.

[27]Doc. No. 18, p. 1.

4

established Defendant defaulted on the 62122 Lease. Defendant cannot now rely on conjecture or insinuation to excuse the established default. The only alleged acts of misconduct were performed by a nonparty. Defendant has not provided evidence connecting Plaintiff to any third-party misconduct. Plaintiff's alleged failure to be "on notice" or "investigate" does not relieve Defendant from his obligations under the 62122 Lease.

The total amount and specific circumstances surrounding the payments from Mr. Schindler to Plaintiff are relevant to determining potential loss to Plaintiff. They do not create a material dispute regarding Defendant's default. Accordingly, Plaintiff is entitled to judgment on the issue of default.

### B. Amount of Loss

Plaintiff requested replevin in the Complaint, but does not request replevin in this motion.[28] It appears undisputed that Defendant does not possess or have control over the tractor at issue in the 62122 Lease.[29] Instead of replevin, Plaintiff requests I grant remedies which "include, without limitation, recovering the total amounts due under the terms of the Lease as of February 5, 2020, of not less than $105,426.79, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred."[30] One of Plaintiff's senior special assets officers provided the total dollar amount, without itemization.[31]

In Plaintiff's Notice of Default and Demand for Payment, it asserted that as of January 8, 2019, Defendant owed it $17,992.88 on all three leases combined, not just the 62122 Lease as

---

[28] Doc. No. 1, ¶¶39-47; Doc. No. 16.

[29] Doc. Nos 9, p. 2; 16, p. 2.

[30] Doc. No. 17, ¶19

[31] Doc. No. 17-1, ¶¶14, 20

issue here.[32] Plaintiff demanded payment by February 8, 2019 to fully cure the default.[33] On April 10, 2019, Plaintiff filed this case alleging over $75,000.00 in controversy.[34] It alleged as of January 8, 2019, Defendant owed a sum not less than $102, 724.06.[35] In the current motion, Plaintiff requests $105,426.79, plus costs and fees.[36] Without itemization or additional evidence, I cannot determine damages resulting from Defendant's default.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiff's Partial Motion for Summary Judgment (Doc. No. 16) is GRANTED IN PART and DENIED IN PART. The undisputed facts establish Defendant defaulted on the terms of the 62122 Lease. To this extent, Plaintiff's Motion for Partial Summary Judgment is GRANTED. Questions remain regarding the precise value of this default. Accordingly, Plaintiff's request for $105,426.79 plus additional, unspecified costs and expenses is DENIED at this time.

IT IS SO ORDERED this 3rd day of March, 2020.

> Billy Roy Wilson
> UNITED STATES DISTRICT JUDGE

---

[32] Doc. No. 17-5.

[33] *Id*. at p. 2.

[34] Doc. No. 1, ¶3

[35] *Id*. at ¶12.

[36] Doc. No. 16.